UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

***

DEVON COOPER,

Petitioner,

v.

CALVIN JOHNSON,[1] *et al.*,

Respondents.

Case No. 3:20-cv-00051-LRH-CLB

ORDER

I.   Introduction

Devon Cooper ("Petitioner" or "Cooper") filed a *pro se* habeas corpus proceeding under 28 U.S.C. § 2254. (ECF No. 5.) This matter is before the Court for adjudication on the merits. Cooper was convicted by *Alford*[2] plea of burglary and sentenced as a large habitual criminal to 10 years to life, concurrent with his sentences in other cases. (Exhibit 56.)[3] In his petition, Cooper claims counsel failed to effectively consult with him prior to the expiration of a more advantageous global plea offer. (ECF No. 5.) The Court will deny the petition and a certificate of appealability.

///

///

///

///

///

///

///

---

[1] The state corrections department's website states Cooper is incarcerated at High Desert State Prison and Calvin Johnson is the warden for that facility. At the end of this order, the Court directs the clerk to substitute Calvin Johnson for respondent William Gittere, under, *inter alia*, Rule 25(d) of the Federal Rules of Civil Procedure.

[2] *North Carolina v. Alford*, 400 U.S. 25 (1970).

[3] Exhibits referenced in this order are exhibits to respondents' answer. (*See* ECF Nos. 13–15.)

1  II. Background[4]

2    A.  Cooper's Four Cases[5]

3      On February 17, 2011, the State charged Cooper in case A with possession of a stolen

4  vehicle. Cooper pleaded guilty to the charge in exchange for the State's dismissal of nine other

5  cases and its agreement not to file a tenth case. Cooper stipulated to small habitual criminal status

6  and a sentence of 5 to 12.5 years on the condition he, *inter alia*, "stay out of trouble;" otherwise

7  his sentence would be 8 to 20 years. (Exhibit 6 at 2, 9–10.)

8      While released on bond, and before sentencing in case A, Cooper acquired cases B, C, and

9  D.[6] The state district court determined Cooper breached the plea agreement in case A because he

10  failed to "stay out of trouble." Cooper thereafter filed a pro per motion to withdraw his guilty plea

11  for case A. (Exhibits 2 at 3–9; 4 at 16; 26.)

12      On March 6, 2013, the state district court replaced Cooper's counsel for case A with

13  Jonathan Powell. On March 13, 2012, Powell told the court he would file a motion to withdraw

14  the guilty plea before the next scheduled hearing if Cooper decided to pursue it. The prosecutor

15  advised she would not negotiate and would seek life sentences for cases B through D if Cooper

16  pursued the motion. (Exhibits 2 at 21–24; 27 at 4, 6.)

17  ///

18  ///

19  ///

20

21  [4] The Court summarizes the relevant state court record for consideration of the issues. The Court makes no
22  credibility or factual findings regarding the truth or falsity of evidence or statements of fact in the state court. The
   Court summarizes the record solely as background to the issues presented and does not summarize all such material.
   No assertion of fact in describing statements, testimony, or evidence constitutes a finding by this Court. The absence
23  of evidence or category of evidence does not signify the Court overlooked that evidence in considering the claim.

24  [5] As did the state supreme court, the Court refers to Cooper's four relevant cases as A, B, C, and D. The
   corresponding case numbers are case A (C278067); case B (C281169); case C (C281170); and case D (C281312-2).
25  (Exhibit 119.) The judgment in case D is at issue in this federal habeas proceeding. (Exhibit 85.)

26  [6] On May 2, 2012, Cooper was indicted in case B for (1) felony possession of a stolen vehicle; (2) assault
   with a deadly weapon; (3) three counts of battery with the use of a deadly weapon; (4) failure to stop when required
27  by an officer's signal; and (5) gross misdemeanor malicious destruction of property. On the same day, he was indicted
   in case C for (1) conspiracy to commit robbery; (2) robbery with use of a deadly weapon; and (3) possession of a
28  firearm by an ex-felon. On May 9, 2012, Cooper was indicted in case D for (1) gross misdemeanor conspiracy to
   commit burglary; and (2) burglary. (Exhibits 8, 9 and 12.)

1

B.  The State made a global settlement offer for Cooper's four cases.

2

At the relevant times, while Powell represented Cooper for case A, Claudia Romney

3

represented him for cases B and C, and Scott Eichhorn represented him for case D. (Exhibits 3 at

4

13; 16 at 1.)

5

Powell and Romney testified at postconviction evidentiary proceedings that the prosecutor

6

sent all three attorneys an email on March 13, 2013, containing a global settlement offer for cases

7

A through D, which read in relevant part:

8

Mr. Cooper has 4 active cases that I believe all of you have:

9

C281170: [sic][7] Dc11 [sic] – Conspiracy, Burg, GL (TD 6-3)

10

C281169: DC25 – Conspiracy, RWDW etc… (TD 9/9)

11

C281170: DC20 – BWDW, AWDW, PSV, Evading, etc… (TD 8/12 DC 20)

12

C278067: DC23 – Pending R/S since December of 2011 – this case was a package
negotiation that dismissed 10 or so cases to a stip 5-12.5 with a stip 8-20 if he re-
13

offended while out of custody awaiting sentencing. Defendant picked up his
remaining 3 cases while out waiting to be sentenced.

14

. . . .

15

I made a record in court today that if any motion to withdraw his plea gets filed, I
16

WILL NOT NEGOTIATE HIS 3 TRIAL CASES, but would take all of them to
trial and seek life without and consecutive time.

17

. . . .

18

I am therefore making a one-time package negotiation to wrap up everything he has
19

in the system. The offer to wrap up everything is as follows:

20

1)      Agree on the record to be sentenced pursuant to the Guilty Plea Agreement
in C278067 (stipulated 8-20) on March 25, 2013, at 9:30 am.
21

AND
22

2)      Plead guilty to Robbery with Use in C281169, stipulate to habitual criminal
23

treatment, stipulate to 10-25 years c/c with C278067

24

AND

25

2)      [sic] Plead guilty to PSV, one count Batt with use of a Deadly Weapon
(naming all), and Felony evading in C281169, stip habitual, stip 10-25 years c/c
26

with C281170 and C278067

27

3)      dismiss C281312B

28

[7] The charges correspond to case number C281312-2. (Exhibit 12.)

3

. . . .

> Thus, I am agreeing to wrap up everything for 10-25 years (which means that he's only getting an extra 2-5 for his crime spree committed while awaiting sentencing).

> This is the only offer he will receive, and this offer will ONLY remain open until March 25 at 9:30 am. NO EXCEPTIONS.

. . . .

> I know this offer was conveyed to Mr. Cooper by Mr. Powell this morning . . .

(Exhibits 104 at 10–12, 25, 33–35; 122 at 2–3.) Cooper testified Eichhorn also told him about the offer. (Exhibit 104 at 58.)

C. Romney discussed the global offer with Cooper on March 18 and 20, 2013.

At the postconviction evidentiary hearing, Romney testified that, in addition to other conversations with Cooper about his cases, she specifically spoke with him about the global offer on March 18, 2013. She said their discussion included discovery, advantages and disadvantages of accepting a global negotiation, the charges to which he would plead guilty, facts and evidence supporting the plea, and his exposure to a life sentence without parole as a large habitual criminal. Romney said Cooper "had always wanted a very specific negotiation for 8 to 20 years to match what he had agreed to" in case A. Cooper confirmed he was not initially satisfied with the offer and wanted to "[t]ry to get an 8 to 20." (Exhibit 104 at 36, 39–40, 46–49, 59.)

Romney testified her notes state they again discussed the offer on March 20, 2013, but Cooper was "not prepared" to accept "the global offer that was given." Romney elucidated:

> Q: All right. So you mentioned the conversation on March 18th. Do you recall having any more discussions with Mr. Cooper in any form about the global offer prior to March 27, 2013?

> A: Yes. We spoke again two days later on the 20th.

> . . . .

> Q: All right. Do you remember what you discussed?

> A: We discussed his decision on whether or not he wanted to accept the global negotiation.

> Q: And what did he indicate to you that he wanted to do?

> A: He indicated to me that he was not prepared to accept the global negotiation.

///

4

Q: Now, is there a difference in your mind between not prepared and no, I don't want it?

A: No. I mean, I had – I had explained to Devon what the offer was. I had gone over the deadline with him. We had a discussion about what the alternatives would have been, meaning, you know, going to trial and facing those charges and penalties. And he said that he did not want to negotiate his case.

(*Id.* at 40–41, 47, 50.)

Cooper testified Romney discussed the offer with him on March 18 and 20, 2013, and he asked her for an in-person meeting to review discovery, but she replied, "[W]ell are you going to take the deal or not?" and Cooper said he responded, "[W]ell, I'd like to see my discovery." Cooper said he did not tell Romney he "wouldn't take the deal;" but merely told her he "would like to see the discovery before he signed the deal" and could not "sign a deal over the phone." Romney testified the case notes stated Cooper was provided discovery before she took over the cases and she did not recall Cooper requesting an in-person meeting. (*Id.* at 40, 51–52, 62–63, 72–73.)

D.  Powell and Romney discussed the global offer by email on March 20, 2013.

Powell testified he went to the jail to discuss the global offer with Cooper on March 20, 2013, but was told Cooper refused to visit him.[8] Powell said he emailed Romney that day telling her that he advised Cooper's family that he needed to take the deal. Romney testified she emailed Powell that day about her "difficult conversations" with Cooper and her uncertainty that he would accept the offer. Based on her conversations with Cooper at the time, Romney believed he rejected the offer and intended to go to trial. Romney emailed Powell and Eichhorn that she believed they were going to trial on Cooper's cases "unless you guys have a plan to get him to come around in the next two days" and she was "all ears." Romney said if plans changed, she "expected either Mr. Cooper or Mr. Powell or even the DA, someone to say . . . I don't know if you're aware, but . . . he made it very known that he changed his mind and we're now going to enter into negotiation," but "[t]hat never happened." (Exhibits 104 at 13, 15–17, 35–36, 50, 53–54; 123.)

///

///

---

[8] Cooper testified he was in "the hole" and not informed of Powell's visit. Powell said there "may have been some type of miscommunication or issue," as he later visited Cooper multiple times. (Exhibit 104 at 13, 18, 68.)

E.  Powell met with Cooper on March 25 and the offer deadline was extended.

Powell testified he spoke with Cooper about the offer on March 25, 2013, before the hearing on the motion to withdraw the guilty plea for case A. Powell said Cooper was "reluctant" to accept the offer at that point because he claimed he "hadn't seen the discovery on the other cases" and had not had an opportunity to discuss what would happen at trial, the evidence against him, and possible defenses. (Exhibit 104 at 14, 17–18, 25–26.)

At the hearing, Powell informed the state district court that "Cooper is no longer seeking to withdraw his guilty plea," however, when the court asked Cooper if that was correct, Cooper said "I don't know." The court reminded Cooper the State warned him if he chose to withdraw his plea in case A, the State would not negotiate his other cases. The court again asked Cooper if he wished to abandon his motion to withdraw his guilty plea for case A and Cooper said, "Yeah, I guess so. Yeah," but when the court pressed for an absolute response, Cooper said he had not had sufficient time to speak with Powell. (Exhibit 28 at 3–4, 5–6.)

The prosecutor advised the court about the global offer and stated Romney told her Cooper refused to see Romney or take her calls. (*Id.* at 5–6.) The prosecutor advised the offer expired that day but agreed to extend the deadline to 5:00 p.m. the following day, March 26, 2013, to "give everybody time to go talk to him." (*Id.* at 6.) The court continued the hearing on the motion to March 27, 2013. (*Id.* at 8.)

F.  Powell met with Cooper on March 26, but Cooper did not accept the offer.

Powell testified he visited Cooper on March 26, 2013, to discuss the global offer. Powell said he did not see a "winnable strategy" for withdrawing the guilty plea in case A as the court had already determined Cooper violated the plea agreement. Powell said Cooper was facing 8 to 20 years for case A whether or not he accepted the global offer. Powell said he explained to Cooper that a concurrent sentence of 10 to 25 years for cases B and C, concurrent with the sentence of 8 to 20 years for case A, resulted in not "much more time in the grand scheme of things," given Cooper's eligibility for a large habitual criminal sentence of life without parole. Powell said Cooper agreed that attempting to withdraw his guilty plea for case A would do more harm than good because he was eligible for a large habitual criminal sentence, his stipulated sentence was

6

only 8 to 20 years, and the State could refile the cases it dismissed as part of the plea agreement for case A. (Exhibit 104 at 18–19, 26–27, 29–30.)

Powell said Cooper nonetheless "expressed some concerns" about accepting the global offer, which Powell believed was because Cooper said he had not seen the evidence in the other cases. Powell said he discussed the charges in the other cases and the facts supporting large habitual eligibility and told Cooper that "it was in his best interest to accept the deal." Powell said when he left the meeting with Cooper, it was his understanding Cooper would speak to his other attorneys "probably that day" to discuss the offer and evidence, and that Cooper would keep "an open mind about the deal." Cooper confirmed he spoke with Powell on March 26, 2013, and Powell told him he needed to take this deal, it was the best deal he would get, and he would be "an idiot" not to take it. (*Id.* at 19–20, 28–29, 60.)

Cooper testified he told Powell he would take the offer and asked Powell to contact his other attorneys to let them know he accepted it. Powell, however, emailed the prosecutor at 5:13 p.m. that day stating Cooper agreed not to withdraw his guilty plea in case A, but did not accept the global offer for the other cases. In his email, Powell told the prosecutor that Cooper "[r]eally would like to package up the other cases in any number of 8-20s concurrent with this case," but that he had informed Cooper the State was unwilling to meet those terms. Powell requested a deadline extension to afford Cooper time to communicate with his other attorneys. (Exhibits 104 at 20–22, 27–28, 61, 67, 70; 124.)

G.  The offer deadline was not extended.

At the hearing on March 27, 2013, Powell advised the state district court that Cooper "will not be moving to withdraw his guilty plea." As for the global offer, Powell said Cooper "didn't feel like he had enough knowledge of the other cases" and had not personally met with his attorneys on the other cases or seen discovery. At the postconviction evidentiary hearing Cooper said he told the court on March 27, 2013, that he was "going forward with the global negotiations," however, the hearing transcript does not include such statement. Powell requested the State "leave the offer open for a short time to give those attorneys an opportunity to speak" to Cooper. The

prosecutor said she had not decided to reinstate the offer but would speak with Romney. (Exhibit 29 at 3–4.)

At the postconviction evidentiary hearing, Romney testified she was aware Cooper decided not to withdraw his guilty plea in case A, but "at no point" did Cooper or Powell inform her that Cooper's decision to refrain from seeking withdrawal of the guilty plea in case A was for the purpose of accepting the global offer. Romney said she was aware of reasons, apart from accepting the global offer, that would cause Cooper not to pursue the withdrawal of his guilty plea in case A. Cooper testified the next time he spoke with Romney was in November of 2013, at which point she told him the prosecutor stated the March offer was "gone." (Exhibit 104 at 41–42, 64–65.)

H. Cooper's cases were resolved by plea agreements.

In case A, Cooper was sentenced, according to the original plea agreement, as a small habitual criminal, to 8 to 20 years imprisonment. Cases B through D were resolved under three separate plea agreements. For case B, Cooper was sentenced as a habitual criminal, to 5 to 15 years imprisonment, concurrent with cases A, C, and D. For case C, he was sentenced to two concurrent terms of 10 years to life, concurrent with case A. For case D, he was sentenced to 10 years to life imprisonment, concurrent with cases A, B, and C. (Exhibits 37, 42, 47, 52, 56, 79–80.)

III. Governing Standards of Review

A. Antiterrorism and Effective Death Penalty Act (AEDPA)

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant a petition for a writ of habeas corpus on any claim that was adjudicated on the merits in state court unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by United States Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding. 28 U.S.C. § 2254(d).

A state court's decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*,

538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court's decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d)(1) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous . . . [rather] [t]he state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–12) (internal citation omitted).

The Supreme Court has held, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult-to-meet" and "highly deferential standard for evaluating state-court rulings, which demands state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

B.  Standards for Evaluating Effective-Assistance-of-Counsel

On petitioner's claims of ineffective assistance of counsel, he must demonstrate (1) the attorney's "representation fell below an objective standard of reasonableness" and (2) the attorney's deficient performance prejudiced the petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. It is a petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687.

///

"[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance . . . ." *Burt v. Titlow*, 571 U.S. 12, 24 (2013). When considering an ineffective assistance of counsel claim, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland,* 466 U.S. at 689 (citation omitted). On the performance prong, the issue is not what counsel might have done differently but whether counsel's decisions were reasonable from his or her perspective at the time. *Id.* at 689–90. A petitioner making an ineffective assistance claim "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. In considering such claims, a court is obligated to "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* Under *Strickland*, strategic choices made "after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* On the other hand, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91.

"Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,'" and when applied in tandem, "review is 'doubly so.'" *See Harrington*, 562 U.S at 105 (internal citations omitted); *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland's* deferential standards apply; hence, the Supreme Court's description of the standard as 'doubly deferential.'") (citing *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003)).

The right to effective counsel extends to plea negotiations. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (extending *Strickland*'s two-part test to plea bargaining context). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). In addition, a defendant has a right to effective assistance of counsel in considering whether to accept a plea. *Lafler v. Cooper*, 566 U.S. 156, 168 (2012). However, the Supreme Court

has declined to elaborate or define detailed standards for defense counsel's performance in plea negotiations, instead recognizing that state and federal law, rules of criminal practice, and standards of professional conduct, are "important guides." *See Frye*, 566 U.S. at 145–46 (collecting sources). In the context of a rejected or expired plea offer, the Supreme Court has stated the prejudice requirements as follows:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Id.* at 147 (citing *Cf. Glover v. United States,* 531 U.S. 198, 203 (2001) ("[A]ny amount of [additional] jail time has Sixth Amendment significance.")).

## IV.  Ground 1

Cooper claims he was denied effective assistance of counsel under the Sixth and Fourteenth Amendments and seeks specific performance of the March 13, 2013, global offer, i.e., an order directing the state district court to vacate the judgment and dismiss case D. He claims counsel's failure to meet with him in-person to discuss discovery, and failure to finalize the offer after he performed the first step required by the offer, prejudiced him because, but for counsel's ineffectiveness, the offer would have been accepted and the charges in the instant case would have been dismissed. (ECF No. 5 at 3–7.)

### A.  The State Supreme Court's Determination

Cooper challenged the judgment in the instant case in postconviction review proceedings. The state district court denied his petition because it addressed ineffective assistance of counsel for cases B and C, but not ineffective assistance by counsel for the judgment at issue, i.e., case D.[9] The state supreme court concluded "under these extremely unusual circumstances" Cooper was

---

[9] Although Eichhorn represented Cooper for case D, which is the underlying case here, Cooper does not challenge his effectiveness. (ECF No. 5 at 6–9.)

permitted to challenge ineffective assistance of counsel for cases B and C to the extent he can demonstrate he was prejudiced in case D. (Exhibits 89, 100, 119.)

On remand, the state district court denied the petition after holding an evidentiary hearing at which Cooper, and two of his attorneys, Powell, and Romney, testified. (Exhibits 104, 107.) Cooper appealed and the state supreme court affirmed the judgment as follows:

> [A]ppellant Devon Cooper had four pending criminal cases with three different attorneys representing him—Jonathan Powell (case A), Claudia Romney (cases B and C), and Scott Eichhorn (case D). The prosecutor offered a global plea agreement in which (1) the charges in this case (case D) would be dismissed, (2) Cooper would abandon the motion to withdraw his guilty plea in case A and proceed with a previously-stipulated sentence, and (3) Cooper would plead guilty in cases B and C, stipulating to habitual criminal adjudication and two concurrent terms of 10 to 25 years. The global plea agreement was not accepted. Ultimately, Cooper abandoned the motion to withdraw his guilty plea in case A and went forward with the previously-stipulated sentence. He also pleaded guilty or nolo contender in cases B, C, and D pursuant to another plea agreement and stipulated to habitual criminal adjudication and three concurrent terms—5 to 15 years in case B and life with the possibility of parole after 10 years in cases C and D.

> In his appeal, Cooper claims the district court erred by rejecting his claim that Romney should have communicated with him in person during the time the global plea agreement was offered and finalized his acceptance of the global plea agreement after he abandoned the motion to withdraw his guilty plea in case A.

> [FN 1] In *Cooper v. State*, Docket No. 72315 (Order of Reversal and Remand, November 15, 2017) at 2-3, this court allowed Cooper "to challenge Romney's performance to the extent he can demonstrate that he was prejudiced in this case" based on "these extremely unusual circumstances."

> To prove ineffective assistance of counsel, Cooper had to demonstrate that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and resulting prejudice such that there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). Both components of the inquiry must be shown, *Strickland*, 466 U.S. at 697, and Cooper had to demonstrate the underlying facts by a preponderance of the evidence, *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004).

> Regarding a plea offer, "counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012) (finding deficient performance where counsel "allowed the offer to expire without advising the defendant or allowing him to consider it"). To demonstrate prejudice when a plea offer has been rejected or expired due to counsel's deficient performance "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer . . . [and] a reasonable probability the plea would have been entered without the prosecution cancelling it or the trial court refusing to accept it." *Id.* at 147. Additionally, "it is necessary to show a reasonable probability that the

1
2
3

end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* We give deference to the district court's factual findings regarding ineffective assistance of counsel if they are supported by substantial evidence and not clearly wrong but review the district court's application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).

4
5
6
7
8
9
10

At the evidentiary hearing, Romney indicated that she spoke with Cooper multiple times while the offer was pending, relayed the global plea offer to him, explained the charge and the supporting evidence, reviewed the discovery with him, and discussed the deadline for the plea offer. Approximately a week before the deadline, Cooper indicated to Romney that he did not want to negotiate. Romney testified that neither Powell nor Cooper ever informed her that Cooper abandoned the motion to withdraw his guilty plea in case A for the purpose of entering into the global plea agreement. Powell testified that Cooper was reluctant about the global plea agreement on the day of the deadline, but that the State extended the offer for a brief time. Powell indicated that at the subsequent deadline Cooper still had concerns about the global plea agreement. Powell asked the State to again extend the deadline to allow Cooper time to discuss the offer with his other attorneys; the State never affirmatively represented that it would extend the deadline again.

11
12
13
14

The district court found that Powell and Romney were credible and that Romney was not ineffective in communicating the offer to Cooper. It additionally found that Cooper had not shown a reasonable probability that the State would have continued to offer the global plea agreement after the second deadline had passed. Because the district court's factual findings are supported by substantial evidence and are not clearly wrong, we conclude that Cooper has failed to show deficient performance or resulting prejudice and therefore is not entitled to relief.

15

(Exhibit 119.)

16

B. Disposition

17
18

The state supreme court reasonably applied *Strickland's* deficiency prong to the state court record in its determination that counsel's performance was not deficient.

19
20
21
22
23

The record shows Cooper's attorneys informed him about the global offer before its expiration. The prosecutor's March 13, 2013, email containing the offer stated Powell informed Cooper about the offer that day. Cooper confirmed he spoke with Romney on March 18 and 20, 2013, and met with Powell in-person on March 25 and 26, 2013. Cooper said Eichhorn also told him about the offer. Thus, Cooper communicated about the offer with all three of his attorneys.

24
25
26
27
28

The state court record also demonstrates counsel were effective in their communications and attempts to communicate with Cooper about the offer. Romney testified her communications with Cooper included a discussion about the global offer terms and deadline, discovery and evidence supporting the charge to which he would plead guilty under the terms of that offer, the advantages and disadvantages of the offer versus trial, and potential penalties for the charges,

13

including exposure to a possible life sentence without parole as a large habitual criminal. Powell testified their discussions concerned the advantages of accepting the offer relative to the disadvantages of rejecting the offer and that he advised Cooper to accept the offer. Romney confirmed that prior counsel distributed discovery to Cooper, and she would have provided him with any additional discovery she may have received during the course of her representation.

Cooper contends Romney was ineffective because she failed to meet with him in-person before the offer expired, however, he failed to show that Romney's decision to communicate by phone was objectively unreasonable under the circumstances. *See, e.g., Woods v. Donald*, 575 U.S. 312, 317 (2015) (holding that habeas relief is precluded where "none of [the Supreme Court's] cases confront 'the specific question presented . . .'").

Cooper further contends Romney was ineffective because she failed to contact him about the offer after it expired, however, he fails to show her actions were unreasonable given the facts known to her at the time. Romney testified it was her understanding, based on her communications with Cooper on March 18 and 20, that he did not wish to negotiate his case and the prosecutor was firmly against Cooper's desired 8-to-20-year concurrent sentence for cases B and C. Romney also testified she never heard from Cooper, Powell, or anyone, that Cooper's decision to drop withdrawal of his guilty plea in case A constituted acceptance of the global offer. As Romney and Powell each testified, it was advantageous for Cooper to refrain from unwinding his guilty plea in case A, even apart from the global offer, because doing so would expose him to a large habitual criminal sentence and refiling of the nine cases that were dismissed in exchange for his guilty plea in that case. Indeed, when the State failed to extend the deadline for the offer after the March 27 hearing, Cooper made no effort to reinstate his motion to withdraw the guilty plea in case A.

The state supreme court also reasonably applied *Frye* in its determination that Cooper failed to show a reasonable probability the prosecutor would have reinstated the offer had counsel met him in-person after the offer expired. The prosecutor gave Cooper a total of 13 days to accept the offer and the prosecutor was aware of counsel's efforts to communicate with Cooper about the offer. The prosecutor warned Cooper that if he did not accept the offer, he would not receive a better offer, and she would pursue life sentences for cases B through D. After final expiration of

14

the offer, the prosecutor was undecided whether or not to reinstate the offer. Nothing indicates the prosecutor was of a mind to do so or did so. Romney testified Cooper did not contact  her to accept the offer and the record fails to support a reasonable conclusion that Cooper, or counsel, expressed to the prosecutor a willingness to accept the offer within a reasonable time after its expiration.

For the foregoing reasons, the state supreme court's determinations are neither contrary to, nor an unreasonable application of, Supreme Court authority, and are not based on an unreasonable determination of the facts. Cooper is not entitled to federal habeas corpus relief for Ground 1.

V.  Certificate of Appealability

This is a final order adverse to Cooper. Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability ("COA"). This Court therefore has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002). Under § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the [federal] district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)). Applying this standard, the Court finds a certificate of appealability is unwarranted.

VI. Conclusion

**IT IS THEREFORE ORDERED** that the petition (ECF No. 5) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is denied.

**IT IS FURTHER ORDERED** the Clerk of Court is directed to substitute Calvin Johnson for Respondent William Gittere.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment and close this case.

DATED this 5th day of January, 2022.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE